**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RIGOBERTO TAVERAS,<br><br>*Plaintiff*,<br><br>v.<br><br>ADVANCE AT HOBOKEN, LLC; ADVANCE REALTY; and LEGACY CONSTRUCTION,<br><br>*Defendants*.<br><br>and<br><br>LEGACY CONSTRUCTION,<br><br>*Third-Party Plaintiff*,<br><br>v.<br><br>LSTD, LLC d/b/a SSA CONSTRUCTION GROUP,<br><br>*Third-Party Defendant*. | Civil Action No. 17-5603<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

Currently pending before the Court is a motion for summary judgment filed by Defendants Advance at Hoboken, LLC; Advance Realty; and Legacy 7 Construction (collectively, "Legacy 7" or "Defendants"). D.E. 103. Plaintiff opposes the motion, D.E. 105-08, and Legacy 7 filed a brief in reply, D.E. 109. The Court reviewed the submissions[1] made in support and in opposition

---

[1] Defendants' brief in support of their motion for summary judgment (D.E. 103-2) is referred to as "Defs. Br."; Plaintiff's opposition brief (D.E. 108) as "Plf. Opp."; and Defendants' reply brief (D.E. 109) as "Defs. Reply".

to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **DENIED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff fell from scaffolding at a construction site and sustained injuries. DSOMF ¶ 30. Plaintiff testified that while installing sheetrock on a wall, the scaffolding platform came undone and collapsed, causing him to fall backwards. Bongiovanni Decl., Ex. E at 85:5-86:5. Plaintiff further testified that when the accident occurred, he was an employee of Third-Party Defendant SSA Construction Group ("SSA").[2] DSOMF ¶ 14. Legacy 7, a general contractor, retained SSA as a subcontractor for a project in Hoboken to perform carpentry, drywall, window installation, and related work. *Id.* ¶ 3. Additional relevant facts are discussed in the Analysis section below.

Plaintiff filed suit in 2017, asserting negligence claims against Defendants. D.E. 1. Defendants subsequently filed answers and Legacy 7 asserted third-party claims against SSA. D.E. 5, 24. On April 1, 2022, the Court granted Defendants' request for leave to file a motion for summary judgment. D.E. 100. Defendants subsequently filed the instant motion. D.E. 103.

### II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return

---

[2] In opposing Defendants' motion for summary judgment, Plaintiff now contends that he was not a SSA employee. PSOMF ¶ 3. To the extent statements in PSOMF contradict Plaintiff's previous deposition testimony, Plaintiff's deposition testimony controls. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (discussing the sham affidavit doctrine). But whether Plaintiff was a SSA employee or the employee of a sub-contractor to SSA does not ultimately impact whether Legacy 7 owed Plaintiff a duty because there is no dispute that Plaintiff was not a Legacy 7 employee.

2

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*

*Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Legacy 7 maintains that it does not owe Plaintiff a duty of care. Legacy 7 continues that because it does not owe a duty, it is entitled to summary judgment. Defs. Br. at 5-6. In New Jersey, a plaintiff asserting a negligence claim must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."[3] *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013) (citations omitted). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Leonard v. Golden Touch Transp. of N.Y. Inc.*, 144 F. Supp. 3d 640, 644 (D.N.J. 2015) (quoting *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010)); *see also Fortugno Realty Co. v. Schiavone-Bonomo Corp.*, 189 A.2d 7, 13 (1963) ("To render defendants liable there must be found a breach of a duty, which duty, if observed, would have averted the plaintiff's injuries."). "Whether a defendant owes a legal duty, as well as the scope of the duty owed, are questions of law for the court to decide." *D'Alessandro v. Hartzel*, 29 A.3d 1112, 1114 (N.J. Super. Ct. App. Div. 2011); *see also Velazquez ex rel. Velazquez v. Jiminez*, 798 A.2d 51, 65 (N.J. 2002) ("The question of duty is one of law to be decided on a case-by-case basis.").

Traditionally under the common law, a contractor was not generally liable for injuries sustained by an employee of a subcontractor. A contractor, however, could owe a duty to a subcontractor's employee if the contractor retained control over the manner or means of the work.

---

[3] The parties agree that New Jersey law applies. The Court, therefore, also applies New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

*See Wolczak v. Nat'l Elec. Prods. Corp.*, 168 A.2d 412, 415 (N.J. Super. Ct. App. Div. 1961) ("Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed."). Courts now also incorporate a "more modern approach" based on the foreseeability of harm to determine whether a contractor owes a duty to a subcontractor's employee. *See Tarabokia v. Structure Tone*, 57 A.3d 25, 31 (N.J. Super. Ct. App. Div. 2012). To determine whether a duty exists under the modern approach, courts "first consider the foreseeability of harm to a potential plaintiff, and then analyze whether accepted fairness and policy considerations support the imposition of a duty." *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007) (internal citations omitted). Thus, in addition to foreseeability, courts consider the following factors: "the relationship of the parties; the nature of the risk; the ability to exercise care; and public policy considerations." *Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1255 (N.J. 2013).

Here, Legacy 7 argues that it was not involved in how SSA performed its work at the construction site, did not supervise SSA's work, and did not provide any of the supplies SSA used at the site. Legacy 7 continues that, therefore, there is no factual basis to impose a duty as to Plaintiff. Defs. Br. at 14. Legacy 7 maintains that this case is analogous to *Tarabokia*. *Id.* at 9. The plaintiff in *Tarabokia*, an employee of a subcontractor named H & B, was injured at a construction site from repetitive use of a tool. The plaintiff brought negligence claims against the general contractor. *Tarabokia*, 57 A.3d at 27. On appeal, the Appellate Division determined that there was no basis to impose a duty on the general contractor "to ensure plaintiff's safe and proper use of equipment selected and supplied by his employer." *Id.* at 36. The *Tarabokia* court indicated that the subcontractor was expressly responsible for ensuring the safety of its workers, and there

5

was no evidence demonstrating that the general contractor was involved in H & B's safety training or supervision of its employees. *Id.* at 30, 34. The Appellate Division also noted that while the general contractor's project manager was on-site, "none of defendant's representatives ever discussed with H & B employees how they performed their work, much less directed the manner and means of their performance." *Id.* at 30. Further, the court continued, H & B employees never asked the defendant how to perform their work. *Id.* Thus, the Appellate Division determined that because the risk of harm concerned a latent injury that was not immediately apparent, did not involve an unsafe or hazardous condition, and because the defendant did not actively contribute to create the harm, the risk of harm was not reasonably or objectively foreseeable to the general contractor. *Id.* at 34-35. The *Tarabokia* court further explained that there was no evidence permitting a court to draw any inference that the general contractor should have been aware of the risk of harm because of the contractor's supervision and involvement with the work. *Id.* at 35.

Plaintiff maintains that *Lopez v. Honeywell International, Inc.*, No. 10-3518, 2014 WL 3500326 (D.N.J. July 14, 2014) is persuasive. Plf. Br. at 24-25. In *Lopez*, the plaintiff was injured when he slipped and fell off scaffolding at work. When the accident occurred, the plaintiff was standing on plastic covered scaffolding and spraying a solvent that caused the scaffolding to become wet and slippery. *Lopez*, 2014 WL 3500326, at *1. The plaintiff was employed by a subcontractor that had contracted to perform asbestos abatement work for Honeywell. *Id.* at *1. Honeywell, the premises owner, also had a contract with Consulting & Testing Services, Inc. ("CTSI") for abatement consulting services. *Id.* at *4. The *Lopez* court determined that CTSI owed the plaintiff a duty because CTSI had constructive notice of the dangerous scaffolding because of regular visual inspections. *Id.* at *13. Moreover, the court noted, CTSI "maintained a supervisory role over the project," served as a liaison to Honeywell, and was bound by a Honeywell

safety handbook. *Id.* The court in *Lopez* explained that "CTSI had the opportunity and was in a position to foresee and discover the harm and to exercise reasonable care to aver it." *Id.* As for Honeywell, the court determined that it too owed the plaintiff a duty because it "retained control over the manner and means of the work performed." *Id.* at *14.

This case is more similar to *Tarabokia*. While Legacy 7 ensured overall safety at the construction site, subcontractors were responsible to ensure the safety of their employees. DSOMF ¶ 5; Plf. Opp. to DSOMF ¶ 5. Moreover, SSA's supervisors acknowledge that they were responsible for ensuring the safety of SSA's employees. DSOMF ¶¶ 32, 41.

Plaintiff also testified that at the construction site, he always received instructions from SSA employees. *Id.* ¶¶ 17-19; *see also* Bongiovanni Decl., Ex. E at 65:2-5. The evidence demonstrates that this occurred the day of the accident. On that day, Saul Sutton, a SSA co-owner, instructed Plaintiff's co-worker that he and Plaintiff should work in the front lobby area of the site. The co-worker told Sutton that the area was too tall, and they needed a lift to perform the work. DSOMF ¶¶ 15, 20-21. Sutton informed Plaintiff's co-worker that he would get scaffolding in the area. *Id.* ¶ 21. Plaintiff and his co-worker left the area to get tools and when they returned, there was scaffolding in place. *Id.* ¶ 22. Plaintiff testified that SSA laborers assembled the scaffolding. *Id.* ¶ 23. Later that day, Plaintiff testified that when Sutton was physically at the worksite, he instructed Plaintiff to continue the work on the scaffolding and told Plaintiff's co-worker to work elsewhere.[4] DSOMF ¶ 28; Bongiovanni Decl., Ex. E at 75:6-12.

---

[4] Sutton testified that he usually went to the worksite once every two to three weeks. Avshalumov Decl., Ex. A at 36:22-37:5. Sutton further testified that he had seen Plaintiff but could not recall precisely when. *Id.* at 111:19-112:3. Accordingly, there is a factual dispute as to whether Plaintiff spoke with Sutton. This factual dispute, however, is not material because nothing in the record demonstrates that the instructions to continue working on the scaffolding came from Legacy 7 or its representative.

Legacy 7, however, did give instructions to SSA employees about where the employees should work. DSOMF ¶ 10. Further, SSA employees gave instructions to other SSA employees about how to perform the assigned work at the worksite, including which tools to use. *See id.* ¶ 35; *see also* Avshalumov Decl., Ex. A at 104:14-105:9 (explaining that when he was at the worksite, Sutton recalled seeing Legacy 7 employees informing SSA's subcontractors where and when to perform work but he does not recall seeing Legacy 7 employees tell SSA's subcontractors how to perform the work); *id.*, Ex. C at 21:15-24 (Scavo explaining that Legacy 7 gave instructions about where to work and timing).[5] And Plaintiff testified that he only received instructions from SSA employees. As to the accident, Plaintiff testified that he used the scaffolding because of Sutton's instructions and was working in the specific area per Sutton's instructions.

Accordingly, the evidence demonstrates that Legacy 7 performed supervisory work at the construction site, but SSA determined precisely how the assigned work should be accomplished by its employees. These circumstances do not create a duty for Legacy 7 because it did not retain control over the manner or means of SSA's work. *See Tarabokia*, 57 A.3d at 32 (noting that the exception allowing a court to impose a duty based on a general contractor's retention of control over the manner and means of doing the work was not implicated); *see also Mavrikidis v. Petullo*, 707 A.2d 977, 985-86 (N.J. 1998) (explaining that "the reservation of control over the equipment to be used, the manner or method of doing the work, or direction of the employees of the

---

[5] It does not appear that Sutton or Scavo, the other co-owner of SSA, were deposed in this matter. Rather, Plaintiff relies on Sutton and Scavo's deposition transcripts from a case that was pending in the United State District Court for the Southern District of New York. In that matter, Plaintiff sought to recover from SSA, Sutton, and Scavo for alleged violations of the Fair Labor Standards Act and related provisions of New York Labor Law. *See Taveras v. LSTD, LLC*, No. 18-903, Compl., D.E. 1 (S.D.N.Y. Feb. 1, 2018).

independent contractor may permit vicarious liability" but that the contractor only exercised general supervisory powers).

Plaintiff, however, also argues that there is a material issue of fact as to whether Legacy 7 provided the scaffolding. Plf. Opp. at 10. Pursuant to the subcontract between Legacy 7 and SSA, SSA was required to provide all tools, materials, and equipment for its work. DSOMF ¶¶ 4, 7. Moreover, other SSA employees confirmed that SSA provided its own tools and scaffolding. Bongiovanni Decl., Ex. F at 42:1-44:12; *Id.* at Ex. G at 35:12-36:23. Sutton, however, testified that pursuant to their agreement, SSA and Legacy 7 both provided scaffolding at the site. Avshalumov Decl., Ex. A at 73:21-74:10. But Sutton does not know who provided the scaffolding that Plaintiff was using when he fell. *Id.* at 128:5-10. Sutton also testified that he never instructed SSA's employees or subcontractors to take scaffolding from another trade working at the site. *Id.* at 127:18-128:2. Scavo, however, testified that he did not know if SSA provided scaffolding. He further explained that SSA only provided small scaffolding and that based on the scaffolding size Plaintiff used when the accident occurred, the scaffolding was probably provided by Legacy 7. Avshalumov Decl., Ex. C at 23:21-24; 24:9-23. Legacy 7 maintains that it did not provide any materials to SSA, including the scaffolding. DSOMF ¶ 8.

Thus, viewing the evidence in a light most favorable to Plaintiff, Sutton does not know who provided the scaffolding at issue and indicated that both SSA and Legacy 7 supplied scaffolding on the site. This testimony does not appear to create a genuine dispute of material fact because Sutton does not know whose scaffolding it was, meaning that the testimony will not help Plaintiff prove his case.

Scavo does not know if SSA supplied the scaffolding at issue, but stated that Legacy 7 "probably" did, based on the size of the scaffolding. Yet, it is not clear to the Court that a genuine

9

dispute of material fact has been raised based on Scavo's testimony. This is because Plaintiff's theory of negligence is not entirely clear. If Plaintiff's theory is that the scaffolding was negligently installed, there does not appear to be any evidence that Legacy 7 was involved in the installation. Thus, whether it was Legacy 7's scaffolding or not would not impact the improper installation. However, if Plaintiff's theory of negligence is that the scaffolding itself was defective, then Legacy 7 could be potentially liable. But the critical question then becomes whether Scavo's "probably" testimony is sufficient (assuming that it is true, as the Court must) to get the case to jury. In other words, if all Plaintiff can muster at this point to prove that the scaffolding was Legacy 7's is Scavo's statement, would Plaintiff—as a matter of law—have made a sufficient showing to avoid summary judgment. The parties do not address this issue, and the Court is hesitant to do so without further input from the litigants.

Consequently, the Court will deny the motion without prejudice to permit additional briefing. The briefing should address Plaintiff's theory of the case and the record evidence in support thereof.

### IV.  CONCLUSION

Therefore, for the foregoing reasons and for good cause shown

**IT IS** on this 10th day of November, 2022,

**ORDERED** that Defendants' motion for summary judgment (D.E. 103) is **DENIED without prejudice**; and it is further

**ORDERED** that the parties shall submit additional briefing consistent with this Opinion and Order as follows:

1. Plaintiff shall submit a letter on the docket no later than November 18, 2022 setting forth his theory of negligence, assuming that a duty may exist solely based on Legacy 7 providing the scaffolding;

2. Defendants shall submit a supplemental brief no later than December 2, 2022. Defendants are not limited to addressing the duty element of a negligence claim;

3. Plaintiff shall submit a supplemental opposition no later than December 16, 2022; and

4. Defendants may submit a supplemental reply no later than December 23, 2022.

_____
John Michael Vazquez, U.S.D.J.